JOHN A. JOHNSON *v.* THE STATE.

CRIMINAL LAW. *Incompetency of juror.* A juror is not incompetent because he said "from what he found out that he thought if prisoner didn't hang they would penitentiary him for life," it not appearing that the statement made by him was founded upon what purported to be evidence, that had been, or would be introduced on the trial, or that any witness, or anyone who had heard a witness, had conversed with him.

FROM CARROLL.

Appeal in error from the Circuit Court of Carroll county. J. T. CARTHEL, J.

HAWKINS & McCALL and M. D. CARDWELL for Johnson.

J. R. HAWKINS and TOWNS and ATTORNEY-GENERAL LEA for State.

TURNEY, J., delivered the opinion of the court.

The plaintiff in error is convicted of murder in the second degree. The first error is assigned upon this language of the charge: "When the evidence shows an intent to kill by the accused, then no words of reproach or abuse whatever are sufficient provocation to free the party killing from murder in the second degree, if it is done by an unlawful act."

If this language were all of the charge upon the subject it would be error.

The charge is this: What is the meaning of the term provocation? (followed by the quotation), and proceeding: "The term provocation may be defined in general terms to be such a state of circumstances or such conduct as is calculated to produce such passion or heat of blood as would so obscure or becloud the reason of an ordinary man as to induce him to take human life. And, to be more definite, as a general rule if a party receives a blow and strikes back and kills his adversary, it is only manslaughter. The law usually regards a blow as sufficient provocation to reduce the killing from murder to manslaughter, if the party strike only under the influence of sudden passion excited by the blow and not from malice. But a slight blow will not always extenuate a killing from murder to manslaughter; much depends upon the character of the weapon used and the manner and circumstances under which it is used, for there must be some reasonable proportion between the mode of resentment and the provocation. Hence, as a general rule, if two persons suddenly quarrel and fight, and one kills the other, it is manslaughter if he did so in self-defense, but if there be proof of malice in his mind at the time of the killing it would be murder."

We think, taking this entire paragraph of the charge, which includes the part objected to, the meaning of the court is made distinct and clear, and is consistent with the long and well-established rule in the State.

The evidence of the declaration of James John-

son in the presence of S. W. Johnson, was only admitted as to S. W. Johnson, and not as to the prisoner, and was subsequently withdrawn by the court, with the instruction that the jury should not regard it for any purpose, and to do so would be perjury.

While it is desirable, and courts and attorneys should strive to have it so, that no illegal evidence should go to juries, still we must not overlook the fact that it is impossible at all times in the progress of a trial to determine questions correctly, and that mistakes will of course occur. When · such is the case, all that can be done is, that the court shall make the correction, and clearly and plainly explain to the jury. To require more is to require an impossibility.

The prisoner is in no attitude to make the objection, as the testimony was never admitted as to him.

It is next objected a juror, ¦Potete, had formed and expressed an opinion. One witness says: "Potete said he didn't see how they could ever get out of or clear of it, according to what he had heard." Another says he "heard Potete say he had been summoned as a juror, and he said to me, 'I told Hood I was incompetent.'" Another witness says, "Potete talked to me last January during a former trial; said they were trying the Johnson case; said from what he found out that he thought if Johnson didn't hang they would penitentiary him for life." A former slave of S. W. Johnson's father says: "Potete said he thought Johnson ought to be sent to the penitentiary for life."

The character of Potete is shown to be unexceptionable. He is introduced, denies the several conversations attributed to him, and says he had not, when taken as a juror, formed or expressed any opinion as to the guilt or innocence of the defendant.

If we altogether disregard the rebutting statement of Potete, still we do not think there is enough in the record to render him incompetent as a juror. There is nothing from which we are authorized to infer that any of the statements said to have been made by him were founded upon what purported to be evidence that had been or would be introduced on a trial. No witness in the case is shown to have conversed with him, or in his presence, upon the subject of the accusation, nor does it appear that anyone who heard from the witnesses had conversed with him or in his hearing. So, if we take all that is charged to be true, it came alone from rumor and would not disqualify.

Great weight must be attached to the fact that the judge trying the cause had the witnesses examined before him, saw their manner, had the benefit of their modes of expression, and was better prepared to weigh and value their testimony than we who see it only on paper. Besides, it appears that the witness to the strongest expression is discredited.

While the practice of introducing the accused juror to purge himself of offense is reprobated in some of the older cases, we see no sufficient reason for excluding him. That he is charged may go to his credit, but certainly does not disfranchise him. He

is no more likely as a general thing to swear falsely than are the partisan friends of a prisoner. By an explanation he may be able to even satisfy impeaching witnesses that they have misunderstood him by honest mistake of his language, and induce them to retract or modify.

The objection that testimony tending to show a conspiracy to kill, after a former jury had acquitted of murder in the first degree, was admitted, is not well taken. While such acquittal is a bar to any further prosecution for that offense, it does not operate to exclude evidence of any and all facts touching the killing. Because the evidence may show a higher grade of offense than the one charged, it does not follow that an offense included in the higher may not be made out by evidence of the higher.

The facts fully warrant the verdict, and the judgment is affirmed.